IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Aquilla Jett Williams, ) | Civil Action No.  8:06-1668-MBS-BHH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Michael J. Astrue, Commissioner of ) | **OF MAGISTRATE JUDGE** |
| Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This case is before the court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff, Aquilla Jett Williams, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act.

### RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS

The plaintiff was 44 years old on the date of the Administrative Law Judge's (ALJ) decision. The plaintiff has a high school education and past work experience as a sales associate, packing machine operator, assembler, and order line person. (Tr. at 104, 109, 112-17, 307-11, 364, 344, 391.) The plaintiff alleges disability due to fractures to her pelvis, right leg, and right arm. (Tr. at 103.) The plaintiff's alleged onset date of disability is November 10, 2000. (Tr. at 83.)

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

The plaintiff filed an application for DIB on December 6, 2000. (Tr. at 83.) Plaintiff's application was denied initially and upon reconsideration. (Tr. at 50-54, 57-59.) Following a hearing on September 10, 2002 (Tr. at 374-93), the ALJ determined that the plaintiff was not disabled. (Tr. at 43-49.) The plaintiff requested a review of the ALJ's decision. (Tr. at 67-72.) The Appeals Council remanded the plaintiff's claim for further administrative proceedings and a new decision. (Tr. at 74-75.) After a second hearing (Tr. at 300-73), a different ALJ also found in a decision dated August 25, 2004, that the plaintiff was not disabled (Tr. at 18-25). The plaintiff requested a review of the second ALJ decision, which was denied by the Appeal's Council on April 7, 2006 (Tr. at 8-11.), thereby making the decision the final decision of the Commissioner.

In making the determination that the plaintiff was not entitled to benefits, the ALJ made the following findings:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in § 216(i) of the Social Security Act and is insured for benefits through September 30, 2005

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(b) and 416.920(b).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR §§ 404.1527 and 416.927).

7. The claimant has the residual functional capacity for light work, reduced by restrictions which require the use of a cane to ambulate more than 15 feet but not to stand or to rise from a seated position; no balancing; no climbing of ladders, ropes or scaffolds, but she can climb ramps or stairs occasionally; no overhead work with the right, dominant arm, but she can lift from waist to shoulder; the use of her left hand is unrestricted; and no operation of foot pedals or controls with the right lower extremity.

8. The claimant is unable to perform any of her past relevant work (20 CFR §§ 404.1565 and 416.965).

9.  The claimant is a "younger individual" (20 CFR §§ 404.1563 and 416.963).

10. The claimant has more than a high school education (20 CFR §§ 404.1564 and 416.964).

11. The issue of transferability of work skills is not material.

12. The claimant has the residual functional capacity to perform a significant range of light work (20 CFR §§ 404.1567 and 416.967).\

13. Although the claimant's nonexertional limitations do not allow her to perform the full range of light work, using Medical-Vocational Rule 202.20 and 202.21 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs include work as a folding machine operator, collator operator, and as a sealing and canceling machine operator.

14. The claimant is not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. §423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful

employment. *See* 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling ("SSR") 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966). Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **DISCUSSION**

**I.     Evaluation of Pain**

The plaintiff first complains that the ALJ failed to properly analyze her allegations of pain. Her complaints of pain are materially summarized in her testimony at 312-318 of the transcript. The plaintiff specifically complains that the ALJ did not adequately perform the analysis for complaints of pain as prescribed by *Mickles v. Shalala*, 29 F.3rd 918 (4th Cir. 1994) and its progeny. Review of the ALJ's decision, reveals that the ALJ was, in the least, express in his adherence to the proper standard of evaluation, as most definitively explained in *Craig v. Chater*, 76 F.3d 585, 593 (4th Cir. 1996) and recently affirmed in *Hines v. Barnhart*, 453 F.3d 559 (4th Cir. 2006). The ALJ, however, may have been less than thorough in the actual required analysis.

Federal regulations, 20 C.F.R. §§ 416.929(a) and 404.1529(a), provide the authoritative standard for the evaluation of pain in disability determinations. *See Craig v. Chater*, 76 F.3d 585, 593 (4th Cir. 1996). Under these regulations, "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Id.* at 594. First, "there must be objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 591 (quotation and emphasis omitted). This threshold test "does not . . . entail a determination of the 'intensity, persistence, or functionally limiting effect' of the claimant's asserted pain." *Id.* at 594. Second, and only after the threshold inquiry has been satisfied, "the intensity and persistence of the claimant's pain, and the extent to which it

affects her ability to work, must be evaluated." *Id.* at 595.  When the ALJ fails to "expressly consider the threshold question" and instead proceeds "directly to considering the credibility of [the] subjective allegations of pain," remand is warranted.  *Id.* at 596.

It is critical to proceed through the steps in order, because "once objective medical evidence establishes a condition which could reasonably be expected to cause pain of the severity a claimant alleges, those allegations may not be discredited simply because they are not confirmed by objective evidence of the severity of the pain . . . ."  *Id.* at 593.  Said differently, once an ALJ concludes that an impairment could reasonably be expected to produce the pain alleged, he ought to view any inconsistency or defect in the plaintiff's subjective testimony through a more discriminating lense because the plaintiff's subjective allegations, at that point, are consistent with the objective expectations.

The ALJ performed this analysis exactly as prescribed.  The plaintiff does not really contend otherwise.  At step one, the ALJ specifically, and favorably to the plaintiff, concluded that "[t]he medical evidence in this case does establish the existence of a medically determinable impairment which is capable of producing some" of the pain of which the plaintiff complains.  (Tr. at 21.)  The ALJ then summarized his duty at step two to evaluate "the intensity, persistence and functionally limiting effects of the symptoms" to "determine the extent to which they affect the claimant's ability to work."  *Id*.

At step two, the ALJ recounted testimony of the plaintiff regarding her ability to work and perform daily activities and then concluded as follows concerning her credibility:

> Considering the claimant's activities, particularly her work activity; the lack of frequent hospitalizations or emergency room visits; the absence of prescription strength pain medication; the apparent absence of any treatment for more than a year, from August 2002 to October 2003; the claimant's poor medication and dietary compliance with no evidence she took advantage of referrals to an indigent drug program; her release in April 2002 to return to work without restrictions; and the opinion of Dr. Dickinson as to claimant's functional restrictions.

(Tr. at 22.) The Court, therefore, finds that the ALJ properly applied the two-step analysis prescribed by *Craig* and its progeny. Any suggestion by the plaintiff to the contrary is without basis.

The plaintiff, however, does contest whether the reasons recited by the ALJ for discounting the plaintiff's complaints of pain, at step two, were substantial. Specifically, the plaintiff complains that (1) the ALJ has failed to explain how the recited reasons undermine the plaintiff's complaints of pain and (2) the recited reasons, in certain instances, actually support the plaintiff's allegations of pain. The Court will consider the plaintiff's objection to each reason recited in the above-quoted paragraph, in turn.

First, the plaintiff argues that, contrary to the ALJ's conclusion, evidence of the plaintiff's work activities supports her allegations of pain insofar as she only worked 3 to 4 hours per day – a fact acknowledged by the ALJ. (Tr. at 22.) The plaintiff also emphasizes that this was the outer limit of her capacity and that she was specifically assigned to the evening shift because it was slow. (Tr. at 333.) The plaintiff was also allowed to sit when not waiting on customers, (Tr. at 336-37) and to take unofficial breaks, in addition to two "official" 15-minute breaks (Tr. at 320, 332). The plaintiff testified that she spent nearly as many hours in "down" time as she did actively working. (Tr. at 337.) The plaintiff argues that this evidence of part-time labor supports her allegations of pain, notwithstanding the ALJ's opposite conclusion.

The Court will not make any determination as to whether the evidence tends to support or contradict the plaintiff's allegation of pain. The Court, however, agrees that it cannot be specifically determined, from the ALJ's conclusory remark, why the ALJ found that evidence of the plaintiff's work activity was in conflict with her testimony regarding pain and disability. It does seem as though the evidence could be suggestive of either determination. Without a more detailed explanation, the Court cannot conclude whether the reason recited by the ALJ is substantial to support his discrediting of the plaintiff's testimony or not.

Next, the plaintiff attacks the ALJ's reliance on a 2002 physician's release, which permitted the plaintiff to return to work without restrictions. The plaintiff notes that this release (1) was made at her own request for financial reasons, in spite of what she perceived as an ongoing disability (Tr. at 390) and (2) was initially refused by her physician but eventually given at her pleading (Tr. at 390). Not only does the ALJ's decision make no mention of these details but it otherwise implies that the release was initiated by the physician and somehow reflective of the physician's opinion concerning the plaintiff's impairments and pain – that they were not disabling. (Tr. at 20, 22.) The plaintiff has produced evidence that the physician held the exact opposite opinion. (Tr. at 390.) More explanation by the ALJ is necessary before such a release, given under the circumstances alleged, could be relied upon as contrary to the plaintiff's allegations of pain.[2]

The plaintiff next claims that the ALJ erroneously concluded that "the lack of frequent hospitalizations or emergency room visits," "absence of prescription strength pain medication," failure to attend a drug program, and "poor medication and dietary compliance" were other reasons to discredit her allegations of pain. (Tr. at 22.) The plaintiff argues that her impairments did not require frequent emergency room visits but instead required less frequent and protracted hospital stays. The plaintiff also contends that there is no evidence that prescription strength pain medication would have been more effective than the over-the-counter prescriptions she was taking and that there is no evidence that her medicinal and dietary requirements, with which she was allegedly noncompliant, would have mitigated her pain.

The Court finds this evidence relied upon by the ALJ more substantial than other cited bases for disbelieving the plaintiff. An ALJ may rely on noncompliance and a failure to seek commensurate treatment as reasons to discredit claims of pain and disability. *See,*

---

[2] The defendant has offered some defense of the ALJ's treatment, not originally contained in the decision. For reasons discussed *infra*, those reasons will not be considered by the Court.

8

*e.g.*, *Mickles*, 29 F.3d at 930 (ALJ did not err by considering inconsistency between the claimant's level of treatment and her claims of disabling symptoms); *English v. Shalala*, 10 F.3d 1080, 1084 (4th Cir. 1993) (failure to take prescribed medication cited with approval as a factor in discrediting a claimant's testimony).  Notwithstanding, the ALJ must consider any explanation the plaintiff has for noncompliance or discrepancies between the alleged severity of her condition and any treatment sought.  *Mickles*, 29 F.3d at 930.  In this regard the ALJ's decision is again wanting for greater analysis of the plaintiff's proffered explanations concerning hospital visits and a referral to a free drug clinic.

Regarding the plaintiff's alleged medicinal and dietary noncompliance, the plaintiff has offered no real explanation, which would require further consideration, other than to argue that there was no evidence that such compliance or medication would have ameliorated her pain and disability.  In the absence of some affirmative evidence of the plaintiff to the contrary, the Court is unaware of any requirement that the defendant make such a showing.  In other words, the relevant cases suggest that there is an implicit assumption, when left unrebutted by the plaintiff, that compliance with prescribed treatment and usage of superior medications will improve a physical ailment.  The plaintiff has not cited any law suggesting otherwise.  The Court, therefore, finds no error in the ALJ's reliance on this factor, of which there was substantial evidence of record in support. (See, e.g., 220-22, 236-37, 241-43, 246-50, 274-77 (evidence of noncompliance).)

As the ALJ found, the absence of prescription medications also undermined her subjective complaints of disabling pain (Tr. 22).  *See Shively*, 739 F.2d at 990 (the lack of strong pain medication was inconsistent with claimant's allegations); *Mickles*, 29 F.3d at 921 (claimant's use of only mild over-the-counter medication for her joint pain, Rolaids for ulcers, and no medication at all for headaches was a factor in discrediting her testimony). The record shows that the plaintiff primarily took only Tylenol and Aleve to relieve her pain. (Tr. at 313-15.)  Accordingly, the ALJ was not in error to conclude that her allegations of pain were inconsistent with the level of medication needed or sought.

Finally, the plaintiff contends that the assessment of Dr. Elizabeth Dickinson, a government-selected examiner, concerning the plaintiff's functional assessment, actually supports the plaintiff's allegations of pain, contrary to the ALJ's determination that it undermines them. The plaintiff highlights the findings of Dr. Dickinson that (1) the plaintiff would be limited to jobs with minimal standing and walking and limited physical activity (Tr. at 220-22); (2) upon reexamination in January 2004, no improvement and some worsening (Tr. at 274-76); (3) the plaintiff can stand or walk less than 2 of 8 hours (Tr. at 278-80); (4) the plaintiff is limited in prolonged standing, *id*.; (5) the plaintiff is impaired in gross manipulation and reaching with the right hand, *id*.; and (6) that a medically required hand-held device is necessary for ambulation, *id*.

Again, the ALJ recites much of Dr. Dickinson's findings but makes no real effort to explain how they are inconsistent with the plaintiff's testimony. More explanation is required before the Court can assess whether substantial evidence exists to support the interpretation selected by the ALJ that the opinion of Dr. Dickinson and the testimony of the plaintiff were somehow at odds. The decision simply contains none.

In sum, the ALJ was not in error concerning his application of the required analytical framework. Likewise, his reliance on evidence of the plaintiff's noncompliance and strength of medication as diminishing factors in the assessment of the plaintiff's credibility was not improper. Those two bases, however, were only a fraction of the ALJ's rationale and insufficient alone, under the circumstances, to constitute substantial evidence to support his conclusion that the plaintiff's allegations of pain should be discounted.

Accordingly, remand is necessary for the ALJ to explain inconsistencies that he allegedly perceived between the plaintiff's testimony and evidence concerning her daily activities, the 2002 release, and the findings of Dr. Dickinson.

## II.    Vocational Expert Testimony

The plaintiff also contests the hypothetical given to the vocational expert (VE) and whether the VE's testimony could constitute substantial evidence to conclude that there

existed jobs in the national economy, which the plaintiff could perform. Specifically, the plaintiff contends that the ALJ's hypothetical included unfounded assumptions that the plaintiff could (1) use both arms except for overhead work; (2) do the prolonged walking and standing required of light jobs; and (3) ambulate 15 feet without a cane.

The Court agrees that an explanation by the ALJ is necessary in defense of the hypothetical as posed. In material part the hypothetical was as follows:

> light exertional work as defined in the regulations . . . . [S]he needs a cane to ambulate long distances, and I'm saying long distances– over 15 [feet]; does not need a cane to stand and can rise from a seated position without the use of a cane and without use of support; the individual should not have a job that involves any climbing of ladders, ropes, or scaffolds; ramps and stairs are okay but no more than an occasional basis. So no frequent use of ramps or stairs. No overhead work with the right dominant arm but lifting from waist to shoulder height is okay. No restrictions on the left hand. No foot pedals or other controls with the right lower extremity.

(Tr. at 364-65.) First, the undisputed evidence is that the plaintiff could only stand and walk less than 2 hours in an 8 hour day. (Tr. at 278.) It seems peculiar, therefore, for the ALJ to conclude and proffer to the VE that the plaintiff would be able to perform light exertional work as defined in the regulations, when such regulations define "light work" as requiring "a good deal of walking or standing." 20 C.F.R. § 404.1567(b). In the alternative, "light work" can also involve "sitting most of the time with some pushing and pulling of arm or leg controls." *Id*. But the ALJ found evidence of restrictions on the right dominant arm as well as on the use of foot pedals or other controls with the right lower extremity.[3] The ALJ should clarify these inconsistencies or pose a renewed hypothetical reflecting any amendments the ALJ concludes are supported by the record.

Also, the ALJ should identify whatever evidence he relied upon in concluding that the plaintiff could ambulate 15 feet without the assistance of a hand-held device or, again,

---

[3] The defendant argues that the limitations reflected in the hypothetical were supported by the findings of Dr. Darla Mullaney, a state agency physician, who, it should be noted, does not appear by name in the ALJ's decision. (Tr. at 224-31.) Notwithstanding, these restrictions still seem inconsistent with a conclusion that the plaintiff can perform light work. An explanation is in order.

propose a modified hypothetical for consideration. The only evidence of this issue, proffered to the Court, is the assessment of Dr. Dickinson that a hand-held device is necessary for *any* ambulation and the testimony of the plaintiff, essentially to the same effect. If the ALJ relied upon other evidence, he did not specify it in his decision.[4]

As to the plaintiff's complaint that the ALJ did not properly reflect the limitations of her arms in the hypothetical, the Court disagrees. The ALJ has cited to various evidence including the testimony of the plaintiff, which is substantial to support a characterization of the upper extremity restrictions as presented to the VE. (*See* Tr. at 21-22.) No explanation or modified hypothetical is required in regards to that limitation.

Accordingly, on remand, the ALJ should identify the evidence relied upon to frame the restrictions, as discussed, or pose a modified hypothetical for additional consideration.

As a final matter, in regards to both issues on appeal, the defendant has put forward various post-hoc rationalizations in support of the ALJ's conclusions, which were not a part of the ALJ's decision, including arguments related to the 2002 release and Dr. Dickinson's findings.[5] These have not been considered by the Court. *See Golembiewski v. Barnhart*, 322 F.3d 912, 915-16 (7th Cir. 2003) ("[G]eneral principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ."); *Steel v. Barnhart*, 290 F.3d 936 (7th Cir. 2002) ("But

---

[4] The defendant argues that other physicians did not find that the plaintiff required a cane. (Tr. at 200-04, 225-26, 233-35, 251, 255-69, 355). As discussed *infra*, this rationalization was not included in the ALJ's decision and will not be considered here. In fact, much of the evidence cited by the defendant was the opinion of Dr. Mullaney, who, as far as the Court can tell, was never even mentioned in the decision other than in regards to a cursory remark concerning the ALJ's general reliance on state agency consultants (Tr. at 24). The defendant has merely speculated that the ALJ struck some compromise between the findings of Dr. Dickinson as to the need for a cane all the time and evidence that no cane was necessary at all. (Def. Brief at 13.) The ALJ, himself, did not so indicate, and the Court will not adopt the defendant's suggested rationale.

[5] For instance, the defendant contends that the standing/sitting limitations suggested by Dr. Dickinson were not corroborated by other examining physicians. As stated, the ALJ never made such a critical distinction. And, that omission is particularly difficult for purposes of the Court's review considering the fact that the ALJ relied so heavily upon Dr. Dickinson's findings in making his credibility assessment of the plaintiff.

regardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for her decision and confine our review to the reasons supplied by the ALJ.").

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, the Court cannot conclude that the ALJ' s decision to deny benefits was supported by substantial evidence.  It is, therefore, recommended, for the foregoing reasons, that the Commissioner's decision be reversed and remanded under sentence four of 42 U.S.C. § 405(g) to the Commissioner for further proceedings as set forth above.  *See Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

IT IS SO RECOMMENDED.

s/Bruce Howe  Hendricks<br>United States Magistrate Judge

July 11, 2007
Greenville, South Carolina